# United States Court of Appeals
## For the First Circuit

No. 15-1149

KAMINA PANDIT; SHAILESHKUMAR PANDIT,

Petitioners,

v.

LORETTA LYNCH,
Attorney General of the United States,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Thompson, and Barron,
<u>Circuit Judges</u>.

<u>John J. Hykel</u> and <u>Renee Hykel Cuddy</u> on brief for petitioners.
<u>Benjamin C. Mizer</u>, Principal Deputy Assistant Attorney General, Civil Division, <u>Derek C. Julius</u>, Senior Litigation Counsel, Office of Immigration Litigation, and <u>Katherine A. Smith</u>, Trial Attorney, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, on brief for respondent.

May 26, 2016

**BARRON**, <u>Circuit Judge</u>.  Kamina and Shaileshkumar Pandit ("the Pandits") have petitioned this Court for review of the denial by the Board of Immigration Appeals ("BIA") of the Pandits' motion to re-open removal proceedings.  As we conclude the BIA acted within its discretion, we deny the petition.

**I.**

The Pandits are natives and citizens of India who have lived as nonpermanent residents of the United States for the past 21 years.  They reside in Massachusetts with their 19-year-old daughter, Pooja, who is a United States citizen.

On November 2, 2009, the Department of Homeland Security began removal proceedings against the Pandits on the grounds that they had arrived in the United States without a valid entry document, <u>see</u> 8 U.S.C. § 1182(a)(7)(A)(i)(I), and that they were present in the United States without being "admitted," <u>see</u> 8 U.S.C. § 1182(a)(6)(A)(i).  The Pandits conceded removability on the former ground, but they sought cancellation of removal pursuant to Section 240A(b) of the Immigration and Nationality Act ("INA").  That section, codified at 8 U.S.C. § 1229b(b), grants the Attorney General discretion to cancel the removal of an alien if the alien satisfies four statutory criteria.

The Pandits argued in their applications to the Immigration Judge ("IJ") that they were entitled to cancellation of removal because they: (A) "ha[d] been physically present in the

- 2 -

United States for a continuous period of not less than 10 years immediately preceding the date of [their] application"; (B) "ha[d] been [] person[s] of good moral character during such period"; (C) "ha[d] not been convicted of" a qualifying offense; and (D) could "establish[] that removal would result in exceptional and extremely unusual hardship to" a "spouse, parent, or child[] who [wa]s a citizen of the United States": their daughter, Pooja. 8 U.S.C. § 1229b(b)(1).

To prove that Pooja would suffer "exceptional and extremely unusual hardship" if the Pandits were removed from the United States, the Pandits contended that Pooja could not live in the United States without her parents and would thus be forced to move back to India with them if they were deported. They further expressed concerns that Pooja "would face difficulties acclimating to the different educational and cultural system in India," as she had only limited knowledge of the Gujarati language and because, they contended, India's cultural norms surrounding women's role in society differed from those in the United States. In addition, Pooja herself testified that she would not be able to adjust to a life in India. She specifically testified that she had become sick on each of her prior visits to India as a result of the food and the weather and that she had once been hospitalized for four hours.

On October 17, 2013, the IJ denied the Pandits' application to cancel removal. The IJ found that the Pandits met two of the statutory criteria, because they had been "physically present in the United States for a continuous period of not less than 10 years" and they had not been convicted of any qualifying crimes under the INA. See id. § 1229b(b)(1)(A), (C). But the IJ also found that the Pandits had failed to show that their removal would result in "exceptional and extremely unusual hardship" to Pooja.[1]

The IJ further determined that, even if the Pandits had met all of the statutory criteria, they would not "merit a favorable exercise of discretion" under the INA, see id. § 1229a(c)(4)(A)(ii) because they had "engaged in fraud repeatedly in order to gain immigration benefits." Besides their initial illegal entry, the IJ found, the Pandits had each entered into (separate) fraudulent marriages for the purpose of obtaining immigration benefits. According to the IJ, Mr. Pandit's fraudulent marriage lasted for almost two years, and Mrs. Pandit's lasted for almost six years. And the IJ further found that a family friend of the Pandits, Vasant Shah, filed a fraudulent labor certification on behalf of Mr. Pandit and "at least one fraudulent employment

---

[1] The IJ made no explicit finding as to the remaining requirement under the statute: that the Pandits had displayed "good moral character" during their time in the United States. See 8 U.S.C. § 1229b(b)(1)(B).

visa petition" on behalf of Mrs. Pandit. Those "negative factors," the IJ concluded, outweighed the positive factors -- such as the Pandits' presence in the country for over sixteen years and their status as business owners and "prominent members of their community."

The Pandits appealed the decision of the IJ to the BIA, but their appeal was denied on July 2, 2014. The BIA "agree[d] with the Immigration Judge that the [Pandits] did not show that their removal would result in exceptional and extremely unusual hardship to [Pooja]."

The Pandits did not file a petition with this Court for review of the BIA's decision.[2] Instead, on September 30, 2014, the Pandits filed a timely motion with the BIA to reopen their removal proceedings. The Pandits' motion relied on what the Pandits contended was new evidence relating to "chronic illnesses" suffered by Pooja and the psychological stress that she would suffer if her parents were removed. In support of their motion, the Pandits submitted materials detailing the basis for those contentions, including affidavits from Pooja and her mother and financial documentation intended to show that the Pandits will be unable to afford medical care for Pooja if they are deported.

---

[2] For that reason, we may not consider the Pandits' argument that the IJ erred in finding that the Pandits did not warrant a favorable exercise of discretion.

The BIA denied the Pandits' motion to reopen on December 29, 2014. The BIA first concluded that the Pandits had not demonstrated that the evidence they submitted in support of their motion to reopen was "new or previously unavailable." See 8 C.F.R. § 1003.2(c). The BIA then went on to state that "even if it considered the merits" of the submitted evidence, that evidence "d[id] not prima facie show that [Pooja] will experience exceptional and extremely unusual hardship should the [Pandits] return to India." The Pandits filed a timely petition for review of the BIA's denial of their motion to reopen on January 23, 2015.

## II.

In order for a motion to reopen to succeed, it must meet "two threshold requirements": it must "establish a prima facie case for the underlying substantive relief sought," and it must "introduce previously unavailable, material evidence." Shah v. Holder, 758 F.3d 32, 36 (1st Cir. 2014) (quoting Fesseha v. Ashcroft, 333 F.3d 13, 20 (1st Cir. 2003)). Our review of a denial based on either of those requirements is for abuse of discretion. Fesseha, 333 F.3d at 20. To show abuse of discretion, the Pandits must show that the BIA "committed an error of law or exercised its judgment in an arbitrary, capricious, or irrational way." Shah,

758 F.3d at 36 (quoting Liu v. Holder, 727 F.3d 53, 56 (1st Cir. 2013)).[3]

The Pandits focus their argument primarily on the BIA's determination that the evidence they submitted was not "new or previously unavailable." See 8 C.F.R. § 1003.2(c) (stating that "[a] motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing"). They contend that it was "irrational" for the BIA to conclude that such evidence was not new. But the BIA also found, as an alternative ground for denying the motion, that the evidence (even if considered new) did not "prima facie show that [Pooja] will experience exceptional and extremely unusual hardship should the [Pandits] return to India."

---

[3] The government argues we do not have jurisdiction over the Pandits' petition, because the BIA's denial of the motion to reopen was a "judgment regarding the granting of relief under section . . . 1229b." See 8 U.S.C. § 1252(a)(2)(B)(i) (providing that "no court shall have jurisdiction to review" such a judgment). It is true that we have dismissed petitions of this sort on jurisdictional grounds before. Valerdi v. Holder, 581 F. App'x 1, 3 (1st Cir. 2014) (citing Parvez v. Keisler, 506 F.3d 93, 96 (1st Cir. 2007)). But in light of Mazariegos v. Lynch, 790 F.3d 280, 285 (1st Cir. 2015) (citing Mata v. Lynch, 135 S. Ct. 2150, 2154 (2015) ("Under the INA, as under our century-old practice, the reason for the BIA's denial [of a motion to reopen] makes no difference to the jurisdictional issue.")), we conclude we do have jurisdiction to review the BIA's denial of the Pandits' motion to reopen, notwithstanding that the underlying judgment denied an application for cancellation of removal.

And thus the Pandits' argument can succeed only if the BIA abused its discretion in so concluding.

The submitted materials do demonstrate that Pooja, a 19-year-old college student, has ongoing medical issues including chronic back pain and a facial cyst. The materials further show that she suffers from stress and depression from the prospect of her parents' removal. The materials also contain a sworn affidavit from Pooja in which she states that she would be unable to live in the United States upon her parents' deportation and thus would be compelled to return to India with them. And Pooja states in her affidavit that she has a history of falling ill on her previous trips to India, that her parents will not be able to afford medical treatment for her in India, and that she will be forced to give up various personal and educational freedoms if she returns to India.

After reviewing this evidence, however, the BIA concluded: "While we do not minimize the hardship that the respondents' removal is likely to cause their daughter, the evidence supporting the motion does not show that her hardship is of such disproportionate severity that it may fairly be characterized as exceptional and extremely unusual in the sense Congress intended." In support of that conclusion, the BIA stated that the materials submitted by the Pandits showed that Pooja's medical issues were on track to be "successfully resolved." The BIA also concluded that the record did not support the "speculative

assertion" that Pooja "will be deprived of health care when her parents return to India."  And the BIA further noted that psychological difficulties such as depression and anxiety are "typical for children whose parents are removed from the United States."

The BIA's conclusions were supportable on the record. The medical report submitted by the Pandits shows that Pooja's facial cyst has been "resolved almost completely," and that report contains no indication that Pooja's back pain is severe.  Rather, the report indicates that Pooja is able to maintain a "normal activity level."  Moreover, the BIA reasonably concluded that the materials submitted by the Pandits did not establish that Pooja will be deprived of medical care if her parents are deported.  Nor do the materials refute the BIA's conclusion that Pooja's psychological issues were "typical," rather than "exceptional and extremely unusual," for the child of immigrants facing deportation.

Thus, given the "very high standard of the current law," In Re Andazola-Rivas, 23 I. & N. Dec. 319, 322 (BIA 2002); In Re Monreal-Aguinaga, 23 I. & N. Dec. 56, 59 (BIA 2001) (explaining that Congress intended cancellation of removal to be granted on the ground of hardship to a United States citizen relative only in "truly exceptional" cases in which removal would cause hardship to the citizen-relative that would be "substantially beyond that

which ordinarily would be expected to result" (quoting H.R. Rep. No. 104-828, at 213 (1996) (Conf. Rep.))),[4] we conclude that the BIA's denial of the Pandits' motion to reopen was not an abuse of discretion.

### III.

For the reasons set forth above, we **deny** the Pandits' petition for review.

---

[4] <u>Luna</u> v. <u>INS</u>, 709 F.2d 126 (1st Cir. 1983), on which the Pandits rely, was decided under the "extreme hardship" standard that applied to suspension of deportation proceedings at that time, rather than the "exceptional and extremely unusual hardship" standard that now applies to cancellation of removal proceedings. <u>See</u> <u>In Re Andazola-Rivas</u>, 23 I. & N. Dec. 319, 322 (BIA 2002) (explaining that the current standard is "significantly more burdensome than the former 'extreme hardship' standard").