**17-2725-cv**
**Henry Lockhart v. MTA Long Island Railroad**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2017

Docket No. 17-2725-cv

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

HENRY LOCKHART,

Plaintiff – Appellant,

v.

MTA LONG ISLAND RAILROAD,

Defendant – Appellee.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARGUED: June 21, 2018
DECIDED: February 4, 2020

B e f o r e:    WINTER, CALABRESI, and LIVINGSTON, Circuit Judges.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jesse M. Furman, <u>Judge</u>), granting appellee's motion for summary judgment and dismissing appellant's claims for failure to establish a <u>prima</u> <u>facie</u> case of retaliation under the Federal Rail Safety Act, 49 U.S.C. § 20109 <u>et</u> <u>seq</u>.  Appellant, a locomotive engineer for the Long Island Rail Road, sought to hold the railroad liable for disciplinary action against him when he failed to report to work while under the influence of prescribed narcotic drugs.  The district court found that, to the extent that appellant was disciplined, it was because of his failure to present verifying documentation required by the railroad's sick-leave policy.  Because the statute does not prevent employers from requesting reasonable documentation to assure themselves that employees' absences are legitimate, we affirm.

> CHARLES C. GOETSCH (Charles Goetsch Law Offices, LLC, New Haven, Connecticut,  <u>on the brief</u>), <u>for Plaintiff – Appellant</u>.
>
> BRIAN K. SALTZ (Mark D. Hoffer, The Long Island Rail Road Company Law Department, Jamaica, New York, <u>on the brief</u>), <u>for Defendant – Appellee</u>.

Jacqueline M. Holmes (Jones Day, Washington, D.C.), for Amicus Curiae Counsel for the Association of American Railroads.

Lawrence M. Mann (Alper & Mann, PC, Bethesda, Maryland), for Amicus Curiae Academy of Rail Labor Attorneys.

WINTER, Circuit Judge:

Henry Lockhart, a locomotive engineer for the Long Island Rail Road ("LIRR" or "the railroad"), appeals from Judge Furman's grant of summary judgment dismissing his retaliation claims brought under the Federal Rail Safety Act ("FRSA"), 49 U.S.C. § 20109 et seq. To sustain such claims, appellant must demonstrate that the disciplinary action was in retaliation for his having engaged in activity protected under the FRSA. Appellant contends that the protected activity here was his refusing to violate the Federal Railroad Administration's ("FRA") safety regulation that prohibits locomotive engineers from reporting to work while under the influence of a prescribed narcotic drug. However, appellant failed to submit a Sick Leave Administration Application Form ("SLA-28") following each absence as required by a LIRR policy directive. Because the

statute does not prohibit employers from requesting reasonable documentation that employees' absences are justified, we affirm.

BACKGROUND

Appellant began working for the LIRR on May 23, 2001, and has been a locomotive engineer for more than twelve years. Appellant argues that the LIRR violated the FRSA by subjecting him to disciplinary proceedings when he refused to violate the FRA's safety regulation that prohibits locomotive engineers from reporting to work while under the influence of a prescribed narcotic drug.

At issue in this case is the interplay between the FRSA[1] and the LIRR's sick leave policy directive which states:

> No Absence Control points will be assigned nor will LIRR be taking corrective or disciplinary action related to any sick leave occurrences where the employee has submitted medical certification on a properly

---

[1] It is undisputed that operating a locomotive under the influence of narcotics creates a hazardous condition under the FRA. Appellant argues that the record "flatly contradict[s]" the district court's holding "that a locomotive engineer who is under the influence of a prescribed narcotic medication is not a 'work-related safety hazard.'" Appellant Br. 22. The district court made no such holding, and the LIRR did not so agree. Indeed, we expressly observe that Kathleen Meilick, the LIRR's Senior Vice President in charge of the LIRR's Medical Department and Labor Relations, testified at her deposition that "for a locomotive engineer to be under the influence of a prescribed narcotic medication would be a hazardous condition," "unsafe," and "in violation of the railroad rules." App'x 397.

4

completed form (SLA-28) within 3 days of returning to work, and the employee is following the orders or treatment plan by a treating physician.

App'x 28.

The SLA-28 form requests, <u>inter</u> <u>alia</u>, the following information: (i) the date of the employee's illness and/or inability to work; (ii) the nature of the illness; (iii) the employee's certification that he was ill and not able to work; and (iv) a "physician's statement," signed by the employee's physician, stating the physician's diagnosis, treatment plan, and opinion as to whether the illness is the result of an injury arising out of and in the course of the employee's employment. App'x 283-84. It is undisputed that appellant failed to submit SLA-28 forms concerning each of his four absences. Each absence will be discussed in turn.

On September 13, 2013, appellant telephoned the LIRR Medical Department to report that he was taking Vicodin, which was prescribed to him after undergoing oral surgery from a non-work-related toothache. The Medical Department instructed appellant not to work for 24 to 48 hours from the time he took the narcotic. Appellant complied and did not report to work on September 14, 2013, but failed to submit a SLA-28 form following this absence. On September 20, 2013, LIRR manager Eric Lomot sent appellant a "Letter of

Caution," noting his September 14th absence. Although the letter stated that it did "not constitute formal discipline," it is undisputed that issuing a Letter of Caution constitutes the first step in the railroad's five-step disciplinary process ending in termination of employment.[2]

The LIRR's medical records reflect that, in August 2011, appellant suffered an on-the-job injury to his right shoulder. In April 2012, appellant underwent an operation on his right shoulder and was prescribed Oxycodone on a per-needed ("PRN") basis. A doctor's note from July 2014 states that "Mr. Lockhart occasionally takes oxycodone on a PRN basis to this date."

On three dates occurring more than several months after the surgery -- December 18, 2013, June 19, 2014, and August 22, 2014 –- appellant telephoned the LIRR Medical Department to report that he was taking Oxycodone for right shoulder pain. On each occasion, the Medical Department advised appellant not to work for 24 to 48 hours from the time he took the narcotic. It is undisputed that appellant failed to submit SLA-28 forms following these absences.

---

[2] The LIRR's Absence Control Policy provides a point system whereby every absence is assigned a certain number of points. A schedule for the number of points within certain time periods triggers a five-step disciplinary process beginning with a Letter of Caution and progressing to a Notice of Investigation, suspension, and eventual termination.

On July 7, 2014, appellant received a second Letter of Caution with respect to six absences post-dating the September 20, 2013 Letter of Caution. Appellant claims that some of those absences were due to his right shoulder pain and that the LIRR Medical Department instructed him not to work after taking the prescribed drugs. On October 6, 2014, the LIRR issued appellant a Notice of Investigation[3] in connection with four of these absences. Appellant claims that on one of those dates, August 24, 2014, he did not report to work because he was taking Oxycodone and instructed by the LIRR Medical Department to stay home.

DISCUSSION

Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review a grant of summary judgment de novo, "view[ing] the evidence in the light most favorable to the [plaintiff] and drawing all reasonable inferences and resolving all ambiguities in [his] favor." CILP Assocs., L.P. v. PriceWaterhouse Coopers LLP, 735 F.3d 114, 118 (2d Cir. 2013) (citation omitted) (internal quotation marks omitted).

---

[3] A Notice of Investigation is the second step in the disciplinary process and requires the employee to attend a disciplinary trial after which he may be suspended for five days if found guilty.

7

The purpose of the FRSA is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. To that end, the FRSA prohibits railroad carriers from retaliating against employees who engage in various safety-related protected activities. See id. at § 20109.[4]

To establish a prima facie case of retaliation under the FRSA, an employee must show by a preponderance of the evidence that: (i) the employee engaged in protected activity as defined in the FRSA; (ii) the employer knew that the

---

[4] Four subsections of the FRSA are relevant:

First, subsection 20109(a)(2) provides that a railroad carrier may not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee if such discrimination is due, in whole or in part, to the employee's lawful, good faith act done, or perceived by the employer to have been done . . . to refuse to violate or assist in the violation of any Federal law, rule, or regulation relating to railroad safety or security.

Second, subsection 20109(b)(1)(A) provides that a railroad carrier "shall not discharge, demote, suspend, reprimand, or in any other way discriminate against an employee for . . . reporting, in good faith, a hazardous safety or security condition." Third, subsection 20109(c)(2) provides that a railroad carrier "may not discipline, or threaten discipline to, an employee for requesting medical or first aid treatment, or for following orders or a treatment plan of a treating physician." Finally, subsection 20109(h) provides that "[n]othing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement. The rights and remedies in this section may not be waived by any agreement, policy, form, or condition of employment."

8

employee had engaged in protected activity; (iii) the employee suffered an unfavorable personnel action; and (iv) the protected activity was a contributing factor in the unfavorable action. See, e.g., Conrad v. CSX Transp., Inc., 824 F.3d 103, 107 (4th Cir. 2016); Araujo v. N.J. Transit Rail Operations, Inc., 708 F.3d 152, 157 (3d Cir. 2013); Bechtel v. Admin. Review Bd., 710 F.3d 443, 447 (2d Cir. 2013). If the employee satisfies these requirements, "then the burden shifts to the employer to demonstrate by clear and convincing evidence that the employer would have taken the same personnel action in the absence of the protected activity." Conrad, 824 F.3d at 107 (internal quotation marks omitted). Failure to satisfy any one of the prima facie requirements is fatal to the employee's claim. See id.

Appellant satisfies element (iii) of a prima facie case because, as a result of his absences, the LIRR issued two Letters of Caution and one Notice of Investigation. These are the first and second steps of the railroad's five-step disciplinary process. The parties spill much ink arguing whether the FRSA protects absences due to work-related maladies only, or whether it also covers off-duty injuries such as appellant's toothache. However, we need not reach that issue because even assuming arguendo that off-duty maladies are covered,

appellant has failed to demonstrate that his absences, when unaccompanied by SLA-28 forms, were protected activity, as directly required by element (i), and indirectly by (ii) and (iv). See Conrad, 824 F.3d at 107.

The dispositive omission here is appellant's failure to submit SLA-28 forms within three days of returning to work, in violation of the LIRR's sick leave policy directive. See App'x 28. Subsection 20109(h) states that "[n]othing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any Federal or State law or under any collective bargaining agreement. The rights and remedies in this section may not be waived by any agreement, policy, form, or condition of employment." "By its plain terms," appellant argues, "subsection (h) voids the use of any railroad form or policy to waive or otherwise negate an employee's Section 20109 statutory right to be protected from adverse actions." Appellant Br. 25-26.

However, nowhere in the statute are employers prevented from using the common practice of requiring reasonable documentation to assure that an employee's claimed medical absences are legitimate. Nor has appellant demonstrated that prohibiting such a practice only in cases involving railroad safety was a policy intended by the Congress. Because nothing in the text,

structure, and purpose of the FRSA directs otherwise, the railroad was within its rights to seek verification of illnesses before excusing appellant's absences as activity protected under the FRSA. Indeed, it would be rather adventurous to infer an FRSA requirement that a railroad take employees at their word that the reason for a failure to report to work was an easily verifiable doctor-prescribed mind-altering drug. The SLA-28 form, which requires a physician's diagnosis, treatment plan, and signature, authenticates that information and does not overstep.

There is also ample case law in other statutory contexts holding that employers have the right to request medical certification documenting an employee's need for protected leave. For example, courts have held that employers may require employees to fill out standardized reasonable accommodation request forms in order to be entitled to accommodations (including sick leave) under the Americans with Disabilities Act. See, e.g., Pauling v. District of Columbia, 286 F. Supp. 3d 179, 211-12 (D.D.C. 2017); Lundquist v. Univ. of S.D. Sanford Sch. of Med., No. 09-CV-4147, 2011 WL 5326074, at *8 (D.S.D. Nov. 4, 2011); Kunamneni v. Locke, Nos. 1:09-CV-005 (JCC), 1:09-CV-450 (JCC), 2009 WL 5216858, at *11 (E.D. Va. Dec. 29, 2009).

Similarly, the Family and Medical Leave Act specifies that employers may require employees to submit health care provider certifications connected to their leave. See 29 U.S.C. § 2613. Appellant has articulated no basis upon which to adopt a view that the FRSA affirmatively prohibits employers from imposing a similar requirement.

Moreover, the SLA-28 form does not constitute a waiver[5] of an employee's rights prohibited by the FRSA and the form does not have to expressly reference the statute. Section 20109(c)(2) states that an employee may not be disciplined "for following orders or a treatment plan of a treating physician." It is perfectly reasonable for a carrier to assure itself that an employee is indeed following a treating physician's orders in missing work by verifying those orders through the submission of standardized health care provider certifications such as form SLA-28.

---

[5] "[W]e note that the issue is more properly considered one of forfeiture than of waiver. The term 'waiver' is best reserved for a litigant's intentional relinquishment of a known right. Where a litigant's action or inaction is deemed to incur the consequence of loss of a right, or . . . a defense, the term 'forfeiture' is more appropriate." Hamilton v. Atlas Turner, Inc., 197 F.3d 58, 61 (2d Cir. 1999) (citing cases).

CONCLUSION

There is no reason to conclude that the FRSA precludes employers from implementing standard policies reasonably designed to verify employees' appropriate use of medical leave.  We therefore affirm.