# United States Court of Appeals
## For the First Circuit

No. 22-1941

GLENDY MARLENY LOPEZ CANO,

Petitioner,

v.

PAMELA J. BONDI, Attorney General,

Respondent.[*]

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Gelpí, Lipez, and Thompson,
Circuit Judges.

Robert M. Warren for petitioner.

Aaron D. Nelson, Trial Attorney, Office of Immigration
Litigation, with whom Brian Boynton, Principal Deputy Assistant
Attorney General, Civil Division, U.S. Department of Justice, and
Corey L. Farrell, Senior Litigation Counsel, Office of Immigration
Litigation, were on brief, for respondent.

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2),
Attorney General Pamela J. Bondi is automatically substituted for
former Attorney General Merrick B. Garland as respondent.

August 28, 2025

**GELPÍ**, **Circuit Judge**.    Glendy Marleny Lopez Cano ("Lopez Cano"), a native and citizen of Guatemala, sought cancellation of removal, withholding of removal, and protection under the Convention Against Torture ("CAT").  An immigration judge ("IJ") denied her applications.  The Board of Immigration Appeals ("BIA" and, together with the IJ, the "agency") affirmed that decision on all grounds.  First, the BIA found that Lopez Cano's petition for cancellation of removal failed because she did not show that her U.S. citizen children would suffer exceptional and extremely unusual hardship upon her removal.  The BIA held, too, that her withholding of removal petition lacked merit because Lopez Cano did not show the requisite nexus between her past and feared future harm and a statutorily protected ground.  And finally, the BIA considered Lopez Cano's CAT claim waived because she failed to properly challenge the IJ's ruling on that score.  Lopez Cano now petitions us for review.  Because we discern no error, we **deny** her petition.

## I. BACKGROUND

As before, we gather our background from the administrative record, which includes Lopez Cano's testimony

before the IJ in November 2018.  See, e.g., Gonzalez-Arevalo v. Garland, 112 F.4th 1, 6 (1st Cir. 2024).

## A. Underlying Facts

Before the IJ, Lopez Cano recounted the circumstances that led her to immigrate to the United States.  Before exiting Guatemala, Lopez Cano worked at a meat shop owned by her father.  She described receiving death threats from people she claims were jealous of her father's success in business and who sought to extort the business.  These people, she said, threatened to "kill" her if she did not open the doors to the meat shop.  She added that the threats happened "very frequent[ly]."  In her application for withholding of removal, Lopez Cano claimed that the threats were on account of a statutorily protected ground because they were based on her relationship with her father, and she maintained that "the Lopez family" constituted "a particular social group" within the meaning of the relevant statute.  8 U.S.C. § 1231(b)(3)(A).

Lopez Cano also experienced violence outside of her father's meat shop.  She recalled one instance in which "an unknown man" held a knife to her throat while she was shopping and threatened to kill her unless the store owner gave him money.  Besides that instance, she presented no evidence of other instances of physical harm.  Lopez Cano fled Guatemala "because [she] feared the extortionists would come after [her] if [she] did not pay

- 4 -

them."  She asserted that she fears "gangs" who would torture her if she returned to Guatemala because "[t]hey think [deportees] have a lot of money."

When her attorney asked why she could not relocate within Guatemala, Lopez Cano admitted she could have moved but feared that "the same thing that happened to me there could've happened somewhere else."  While Lopez Cano reported the threats to the police, she insisted that the Guatemalan police are "corrupt and will not protect me and my family."

Lopez Cano testified that she has lived in the United States continuously since November 18, 2000.  During that time, she gave birth to three U.S. citizen children.  One of her children, Tommy, suffers from anxiety, which causes him to bite his nails.  Tommy had been attending psychotherapy sessions on a weekly basis at the time of the hearing.  Lopez Cano testified that she would not be able to afford the mental health treatment Tommy needs in Guatemala.  Her other two children do not have any health conditions.  Dr. Lien Pham, Tommy's primary care physician, opined that "[i]t would be an undesirable situation for the children" if Lopez Cano were to be "separated from them."  If she is removed to Guatemala, Lopez Cano believes her children would have to go with her, though she admitted that their father lives in the United States.

## B. Procedural History

In a lengthy written decision following Lopez Cano's merits hearing, the IJ noted "significant concerns with" Lopez Cano's testimony, but declined to make an adverse credibility finding.

On the merits, the IJ began with Lopez Cano's application for cancellation of removal, which she denied on two independent grounds. First, the IJ concluded that Lopez Cano "[wa]s not statutorily eligible for cancellation" because "she ha[d] not shown that she ha[d] been present in the United States for the requisite ten years." But even if statutorily eligible, the IJ concluded, Lopez Cano did "not sustain[] her burden to show that her children would face exceptional and extremely unusual hardship" following her removal. In so finding, the IJ addressed Tommy's ongoing anxiety and highlighted evidentiary gaps in the record, including: (1) whether the children would accompany Lopez Cano to Guatemala; (2) whether Tommy would have access to a therapist in Guatemala or could continue therapy over the phone; and (3) whether Tommy would continue mental health treatment if he remained in the United States. Ultimately, the IJ concluded that the children's separation from their mother would be "the only hardship that [her] three children would face," which the IJ held was insufficient to cancel Lopez Cano's removal.

The IJ next addressed Lopez Cano's application for withholding of removal. After considering Lopez Cano's testimony and the record, the IJ found that the threats Lopez Cano suffered while in Guatemala did not rise to the level of "persecution on account of a protected ground."[1] Rather, the IJ observed, Lopez Cano had "been a victim of general crime, motivated by financial gain." As to future persecution, the IJ determined that Lopez Cano feared "generalized crime" instead of "persecution based on a protected ground." And although the IJ acknowledged that the country-conditions evidence showed that Guatemala was experiencing "widespread violence," the IJ deduced that the record did not show that Lopez Cano would "specifically be singled out and harmed" based on a protected ground. For these reasons, the IJ ruled that Lopez Cano failed to "show that she is more likely than not to be subject to persecution" and, accordingly, denied her withholding of removal.

Lastly, the IJ considered Lopez Cano's request for protection under the CAT. The IJ found that neither Lopez Cano's testimony nor the documentary evidence in the record supported a finding that Lopez Cano "would be singled out and tortured by, or

---

[1] For mistreatment to constitute persecution on account of a protected ground, it must be committed against the person due to their race, religion, nationality, membership in a particular social group, or political opinion. 8 C.F.R § 1208.16(b)(l); 8 U.S.C. § 1231(b)(3)(A).

- 7 -

with the acquiescence of[,] the Guatemalan government." Based on that finding, the IJ denied Lopez Cano's request for CAT protection.

Lopez Cano timely appealed to the BIA, which affirmed the IJ's denial of her applications. Regarding her application for withholding of removal, the BIA noted that Lopez Cano "ha[d] not established her family was, or will be, the reason she and her father were targeted for extortion" by gangs, noting that she testified that she was threatened at knifepoint while shopping at another store. The BIA thus was "unpersuaded [that] the [IJ] clearly erred in finding that [Lopez Cano] failed to establish the requisite nexus between her past and feared future harm and a statutorily protected ground." Because the no-nexus ruling was dispositive as to withholding of removal, the BIA declined to consider Lopez Cano's other arguments pertaining to that application.

The BIA then turned to Lopez Cano's application for cancellation of removal. The BIA affirmed the IJ's hardship finding, concluding that Tommy's anxiety was not a sufficiently serious health condition "to rise to the level of exceptional and extremely unusual hardship." The BIA also concluded that the cumulative hardship the children would experience would not "result in hardship beyond which we would expect upon a parent's removal from the United States." Lastly, the BIA rejected

Lopez Cano's arguments that In re Matter of Gonzalez Recinas established a legal test "rather than listing factors to be considered in making a hardship determination," or that the IJ failed to considered necessary evidence. Regarding her application for withholding of removal, the BIA noted that Lopez Cano "ha[d] not established her family was, or will be, the reason she and her father were targeted for extortion" by gangs. Likewise, the BIA echoed the IJ's finding that Lopez Cano had been the victim of a general crime motived by financial gain. Here, the BIA noted that Lopez Cano's testimony of being held at knifepoint in an incident unrelated to her involvement with her father's business demonstrated a general fear of gang violence rather than "a clear probability of persecution on account of a protected ground." For these reasons, the BIA affirmed the IJ's finding as to cancellation of removal.

And, in short order, the BIA considered -- and rejected -- Lopez Cano's CAT claim, finding that she waived the claim by failing to "meaningfully challenge the [IJ's] denial of her request."

This petition followed.

## II. DISCUSSION

Before us, Lopez Cano challenges the agency's denial of her applications for cancellation of removal, withholding of removal, and CAT protection. We address each argument in turn,

applying the correct standard of review along the way. In doing so, we consider "the BIA's decision . . . as the agency's final decision and look to the IJ's decision only 'to the extent that the BIA deferred to or adopted the IJ's reasoning.'" Mendez v. Garland, 67 F.4th 474, 481 (1st Cir. 2023) (quoting Chavez v. Garland, 51 F.4th 424, 429 (1st Cir. 2022)).

## A. Cancellation of Removal

Lopez Cano challenges the denial of her application for cancellation of removal on two grounds. First, as far as we can glean, Lopez Cano challenges the agency's weighing of the facts in concluding that she did not satisfy the hardship standard. She contends that the agency failed to give adequate weight to Tommy's "hardship of not having his mother's care and presence in the USA." Second, she argues that the agency committed legal error by not properly analyzing required hardship factors articulated in In re Matter of Monreal-Aguinaga, 23 I. & N. Dec. 56 (BIA 2001) (henceforth, "Monreal") and In re Matter of Gonzalez Recinas, 23 I. & N. Dec. 467 (BIA 2002) (hereafter, "Recinas").

In the cancellation of removal context, "[c]ourts retain jurisdiction to 'review . . . constitutional claims or questions of law.'" Contreras v. Bondi, 134 F.4th 12, 19 (1st Cir. 2025) (quoting 8 U.S.C. § 1252(a)(2)(D)). "Whether the agency failed to consider relevant factors in the hardship determination is a legal question, and so we have jurisdiction to review it." Nolasco v.

Bondi, 134 F.4th 677, 685 (1st Cir. 2025). We review questions of law de novo. Xirum v. Bondi, 141 F.4th 345, 353 (1st Cir. 2025). Mixed questions of law and fact -- such as whether a particular set of facts satisfies the exceptional and extremely unusual hardship standard -- remain reviewable. Wilkinson v. Garland, 601 U.S. 209, 217 (2024). Our review of mixed questions of law and fact is meant to be "deferential."[2] Id. at 218. However, "[t]he facts underlying any determination on cancellation of removal [] remain unreviewable." Id. at 225.

Having outlined our standard of review, we move to the merits. To establish eligibility for cancellation of removal, a petitioner must show that (1) she "has been physically present in the United States" continuously for at least ten years, (2) she "has been a person of good moral character," (3) she "has not been convicted of" certain criminal offenses, and (4) her "removal would result in exceptional and extremely unusual hardship" to a qualifying relative.[3] 8 U.S.C. § 1229b(b)(1)(A)-(D). Only the

---

[2] We once again decline to flesh out the specifics of our deferential review in this context as doing so is unnecessary to the resolution of this case. See Contreras, 134 F.4th at 19 n.7.

[3] Only a petitioner's spouse, parent, or child who are U.S. citizens or lawful permanent residents are qualifying relatives. See 8 U.S.C. § 1229b(b)(1)(D).

hardship determination is at issue here, so that is where we focus our analysis.[4]

To meet the hardship standard, a petitioner "must 'establish that h[er] qualifying relatives would suffer hardship that is substantially different from, or beyond, that which would normally be expected from the deportation of [a noncitizen] with close family members'" in the United States. Tacuri-Tacuri v. Garland, 998 F.3d 466, 472 (1st Cir. 2021), abrogation on other grounds recognized by Figueroa v. Garland, 119 F.4th 160, 165 (1st Cir. 2024) (quoting Monreal, 23 I. & N. Dec. at 65). Petitioner, however, "need not show that such hardship would be 'unconscionable.'" Recinas, 23 I. & N. Dec. at 468 (quoting Monreal, 23 I. & N. Dec. at 60). In evaluating whether a petitioner has met her burden of proof, the agency should consider "the age, health, and circumstances of the qualifying family members, including how a lower standard of living or adverse country conditions in the country of return might affect those relatives." Recinas, 23 I. & N. Dec. at 468 (citing Monreal, 23 I. & N. at

---

[4] The IJ concluded that Lopez Cano was not statutorily eligible for cancellation of removal because she failed to "show that she has been present in the United States for the requisite ten years." The BIA declined to reach the continuous presence issue. Because the BIA did not address that issue, we do not consider it. See Domingo-Mendez v. Garland, 47 F.4th 51, 53 n.1 (1st Cir. 2022).

63).  Notably, the agency must consider the relevant factors "in the aggregate."  Monreal, 23 I. & N. Dec. at 64.

Accepting the agency's factual findings as they are, and affording deference to the agency, we discern no error in the BIA's conclusion that Lopez Cano failed to satisfy the hardship standard.  The BIA accepted the IJ's finding that Tommy suffers from anxiety but, like the IJ, found no basis for concluding that the hardship to Tommy, or the cumulative hardship to Lopez Cano's three children, would be exceptional and extremely unusual.  In making that determination, the BIA emphasized the scanty evidence in the record concerning Tommy's anxiety, which manifested in nail-biting.  The BIA pointed out that Lopez Cano did not make clear whether her children would accompany her to Guatemala and, if so, whether Tommy's anxiety could be treated there.[5]  The BIA stated that, without evidence on those matters, "the record does not establish that [Tommy's] health issues are so serious that they rise to the level of exceptional and extremely unusual hardship."  See, e.g., Pandit v. Lynch, 824 F.3d 1, 4 (1st Cir. 2016) (noting the BIA's observation that "psychological difficulties such as depression and anxiety are 'typical for children whose parents are removed from the United States'").  In

---

[5] The IJ also noted that Lopez Cano did not address whether Tommy would be able to continue therapy remotely or whether he "would continue mental health treatment if he remained in the United States upon her removal."

- 13 -

addition, the BIA noted that Lopez Cano's "two younger children are healthy and have no problems in school." Based on this state of the record, the BIA observed that Lopez Cano failed to show that the difficulty for her children, including Tommy, would be "substantially beyond the ordinary hardship that would be expected when a close family member leaves the country." Monreal, 23 I. & N. Dec. at 62. We discern no error in that assessment. To the extent Lopez Cano challenges the IJ and BIA's factual findings, we lack jurisdiction to review that argument. See Wilkinson, 601 U.S. at 222 (citing Patel v. Garland, 596 U.S. 328 (2022)).

Lopez Cano next argues that the BIA committed legal error by failing to analyze certain hardship factors articulated in Monreal. See, e.g., Rosa v. Garland, 114 F.4th 1, 14 (1st Cir. 2024) (holding that a claim that the agency failed to follow its binding precedent constitutes reviewable legal error). To be more precise, she argues that Monreal requires the BIA to consider "the age of the subject, family ties in the U.S. and abroad, length of residency in the U.S.[,] conditions in the country to which the [noncitizen] is returnable, economic, financial status, and position in the community." We are unpersuaded for several independent reasons. As an initial matter, Monreal's use of permissive language makes clear that the agency may, but is not required to, consider each of the enumerated factors, and Lopez Cano cites no authority to the contrary. See Leao v. Bondi,

- 14 -

144 F.4th 43, 54 (1st Cir. 2025).  And, without an explanation from Lopez Cano describing how consideration of her desired factors would strengthen her hardship claim, "'we cannot conclude it was legal error for the agency not to explicitly address' those desired factors."  Id. (quoting Nolasco, 134 F.4th at 685).

Lopez Cano also insists that the BIA erred in ignoring her poor job prospects in Guatemala in its hardship determination.  We disagree.  Agency precedent makes clear that the agency "should" consider "how a lower standard of living or adverse country conditions in the country of return might affect [qualifying] relatives."  Recinas, 23 I. & N. Dec. at 468 (citing Monreal, 23 I. & N. at 63).  Though the BIA specifically cited to Recinas and Monreal in discussing the factors relevant to its hardship analysis, it made no explicit findings regarding Lopez Cano's job prospects in Guatemala.  But, in any event, Lopez Cano did not explain how her poor economic prospects in Guatemala would bolster her hardship claim.  See Leao, 144 F.4th at 54 (holding that petitioner's failure to explain how the consideration of a particular piece of evidence would strengthen his hardship claim doomed his claim).  That failure is once again fatal to her claim especially, as the agency noted, absent evidence that the children would relocate to Guatemala or that Tommy's anxiety cannot be properly treated there.  See Nolasco, 134 F.4th at 685.

For these reasons, we reject Lopez Cano's challenge to the BIA's decision to deny cancellation of removal.

## B. Withholding of Removal

Next, we consider Lopez Cano's challenge to the BIA's denial of her application for withholding of removal. We review the agency's legal conclusions de novo and its findings of fact under the substantial evidence standard, meaning that we uphold the agency's factual determinations "unless the record compels a contrary conclusion." Chun Mendez v. Garland, 96 F.4th 58, 64 (1st Cir. 2024) (quoting Espinoza-Ochoa v. Garland, 89 F.4th 222, 230 (1st Cir. 2023)).

A petitioner seeking withholding of removal "must establish a clear probability that, if returned to [her] homeland, [s]he will be persecuted on account of a statutorily protected ground." Sanchez-Vasquez v. Garland, 994 F.3d 40, 46 (1st Cir. 2021) (citing 8 U.S.C. § 1231(b)(3)(A)). Assuming Lopez Cano can demonstrate a clear probability of persecution, she must also prove a nexus between her anticipated harm and a statutorily protected ground. See Marquez-Paz v. Barr, 983 F.3d 564, 565 (1st Cir. 2020). To satisfy the nexus requirement, Lopez Cano must provide some evidence showing that her membership in the Lopez family was "at least one central reason" why the gangs targeted her.[6] Chun

_____

[6] We assume without deciding that "the Lopez family" is a legally cognizable particular social group. See Marquez-Paz, 983

- 16 -

Failing to satisfy the nexus requirement dooms her application for withholding of removal. See Marquez-Paz, 983 F.3d at 565.

The BIA held that Lopez Cano did not meet the nexus requirement because she did not show her membership in her family was the reason she and her father were (or would be) targeted. Before us, Lopez Cano only challenges the BIA's determination that she failed to "establish a well-founded fear of persecution on account of her" membership in the Lopez family. In particular, as far as we can tell, Lopez Cano contends that the evidence in the record compels the opposite conclusion. Not so.

Nothing in the record compels the conclusion that Lopez Cano's family will be a central reason Guatemalan criminal gangs would target her. Rather, Lopez Cano's own testimony supports the agency's no-nexus finding. Lopez Cano testified that people she claims were jealous of her father's success in business frequently threatened her with death while working in the store. However, she also testified that other business owners in the area who had no connection to her family also experienced similar threats and extortion. Notably, Lopez Cano stated that she fears the gangs would target her if she returned to Guatemala because

---

F.3d at 565 n.1 (assuming without deciding that petitioner's proposed social group was valid).

- 17 -

"[t]hey think [deportees] have a lot of money" -- not because of her status as a member of her family. Based on these facts, we find no error with the agency's finding that Lopez Cano failed to establish a nexus between her fear of persecution and her membership in a statutorily protected class. Accordingly, the BIA's denial of withholding of removal to Lopez Cano is supported by substantial evidence in the record.

## C. CAT Protection

We last consider Lopez Cano's challenge to the agency's determination that she was ineligible for CAT protection. To raise a successful claim for relief under the CAT, Lopez Cano must show that she "would be subject to torture by or with the acquiescence of a government official" upon her return to Guatemala. Urias-Orellana v. Garland, 121 F.4th 327, 338 (1st Cir. 2024) (quotation marks omitted) (quoting Perez-Trujillo v. Garland, 3 F.4th 10, 18 (1st Cir. 2021)). The IJ concluded that Lopez Cano failed to meet her burden of proof and, accordingly, denied her CAT relief. In her appeal to the BIA, Lopez Cano failed to meaningfully challenge that conclusion. Thus, the BIA deemed the issue waived. We agree with the BIA and so decline to consider Lopez Cano's argument for failing to exhaust available administrative remedies. See Barnica-Lopez v. Garland, 59 F.4th 520, 526 n.2 (1st Cir. 2023) ("We have repeatedly held that a petitioner's failure to present developed argumentation to the BIA

- 18 -

on a particular theory of relief amounts to a failure to exhaust administrative remedies as to that theory." (citation modified)). But even if we disagreed with the BIA, Lopez Cano has waived her CAT claim before us by failing to properly address in her brief the merits of her claim or challenge the BIA's waiver determination. See Alvarado-Reyes v. Garland, 118 F.4th 462, 474-75 (1st Cir. 2024) (finding waiver where, as here, petitioners only dedicate a few sentences in their brief to their CAT claim).

### III. CONCLUSION

For the foregoing reasons, we **deny** Lopez Cano's petition.